IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TRACEE DAWN CUMMINGS,            )      CIVIL 17-00186 LEK-RLP
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
NANCY A. BERRYHILL,              )
                                 )
          Defendant.             )
_____)

**ORDER GRANTING PLAINTIFF'S APPEAL, VACATING
THE ADMINISTRATIVE LAW JUDGE'S AUGUST 26, 2015 DECISION,
<u>AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION</u>**

Before the Court is Plaintiff Tracee Dawn Cummings's
("Plaintiff") Complaint – Social Security Appeal ("Complaint"),
filed on April 25, 2017, in which she appeals from Administrative
Law Judge Nancy Lisewski's ("ALJ") August 26, 2015 Decision
("Appeal"). The ALJ issued the Decision after conducting a
hearing on June 19, 2015. [Administrative Record ("AR") at 29.[1]]
The ALJ ultimately concluded Plaintiff was not disabled, for
purposes of the Social Security Act, from September 1, 2011
through the date of the Decision. [Decision at 11.]

On September 18, 2017, Plaintiff filed her "Motion for
Summary Adjudication," which also constitutes her Opening Brief.
[Dkt. no. 17.] Defendant Nancy A. Berryhill, Acting Commissioner
of Social Security ("the Commissioner"), filed her Answering

_____

[1] The Decision, including the Notice of Decision, is AR
pages 26-39. All subsequent citations to the Decision refer to
the page numbers of the Decision itself.

Brief on November 30, 2017, and Plaintiff filed her Reply Brief on January 4, 2018. [Dkt. nos. 20, 21.] This Court heard oral argument in this matter on April 9, 2018. Plaintiff's Appeal is granted, and the ALJ's Decision is vacated. The case is remanded to the ALJ for further proceedings. In light of these rulings, Plaintiff's Motion for Summary Adjudication is also granted.

## BACKGROUND

On April 1, 2013, Plaintiff filed a Title II application for disability insurance benefits, alleging a disability beginning September 1, 2011 ("alleged onset date"). The claim was denied, initially and on reconsideration. On August 14, 2014, Plaintiff filed a written request for a hearing. At the June 19, 2015 hearing, Plaintiff was represented by Paula Boyer, a non-attorney representative. Plaintiff, Deborah Thompson – Plaintiff's mother, and Ron Joseph Fleck – an impartial vocational expert ("VE") – testified at the hearing. [Decision at 1.]

In the instant appeal, Plaintiff does not dispute the ALJ's findings in steps one through three of the five-step sequential analysis to determine whether a claimant is disabled. Thus, the ALJ's findings as to those steps are only briefly discussed here.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. [Id.

at 3.]  According to Ms. Thompson, Plaintiff had a nervous
breakdown in 2011.  [Id. at 8.]

At step two, the ALJ found Plaintiff had the following
impairments that were considered severe: obesity; anxiety; and
post-traumatic stress disorder ("PTSD").  [Id. at 3.]  At step
three, the ALJ found none of Plaintiff's impairments, either
individually or in combination, met or medically equaled the
severity of one of the impairments listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  [Id.]

At step four, the ALJ found Plaintiff had the residual
functional capacity ("RFC") "to perform medium work as defined in
20 CFR 404.1567(c) except she is limited to simple, routine work
with no exposure to hazards."  [Id. at 5 (emphasis omitted).]
The ALJ found this RFC assessment was "supported by evidence of
significantly improved symptoms with medication and [Plaintiff's]
activities of daily living."  [Id. at 11.]

The ALJ noted Plaintiff's testimony that: she had
anxiety and difficulty with interpersonal interaction; she does
not leave her home and cannot go to unfamiliar places; and
medication has not helped her symptoms.  However, she testified
that therapy has helped her "in learning 'to breathe through
panic attacks.'"  [Id. at 5.]  The ALJ found Plaintiff's
"medically determinable impairments could reasonably be expected
to cause the alleged symptoms," but Plaintiff's testimony about

3

"the intensity, persistence and limiting effects of these symptoms [and her physical symptoms was] not entirely credible." [Id. at 5-6.]

As to her physical symptoms, Plaintiff asserted she had a history of back pain, and her weight gain was a significant contributing factor to the pain. However, the ALJ found a February 2013 x-ray and a June 2013 magnetic resonance imaging scan of Plaintiff's lumbar spine did not show any abnormalities. [Id. at 6 (citing Exh. 5F/6-7 & 5 (AR at 381-82 & 380)).[2]] Thus, the objective evidence did "not support the degree of back pain alleged by [Plaintiff] and indicate[d] that her pain is the result of obesity." [Id.] Further, the ALJ noted Plaintiff's "plan of diet and exercise . . . resulted in positive gains." [Id.] After telling Christopher Russell, R. PA-C,[3] in January 2015 she believed the increase in her back pain was due to weight gain, and that her goal was to lose one hundred pounds in a year, Plaintiff reported losing twenty pounds by April 2015 by dieting, using a treadmill, and doing yoga. [Id. at 6, 8 (citing Exh. 14F/63 & 32 (AR at 688 & 657)).[4]] The ALJ ruled

---

[2] Exhibit 5F consists of "Progress Reports, Radiology & Lab Result Reports" from the West Hawaii Community Health Center ("WHCHC"). [List of Exhibits, AR at 44.]

[3] "RPA-C" refers to Registered Physician Assistant - Certified.

[4] Exhibit 14F is the "Medical Evidence of Record" from
(continued...)

that inconsistencies in the record undermined Plaintiff's credibility about the severity of her condition. For example, in June 2015, Plaintiff told Patricia Patrick, M.D., she would require back surgery within three years, but such a recommendation did not appear in Plaintiff's records, and the statement was inconsistent with the imaging results. [Id. at 8 (citing Exh. 11F/4 (AR at 565)).[5]] Further, Plaintiff's weight loss activities contradicted the reports that she did not want to be active during the day. [Id.] The ALJ therefore found Plaintiff was "far more active than alleged," and a restriction that she not "be exposed to hazards in the workplace" would be enough to "prevent any mishaps while working due to her alleged pain." [Id. at 6.]

As to Plaintiff's psychological symptoms, the ALJ noted Plaintiff began experiencing anxiety, without medication, while she was still employed. In July 2011, Plaintiff reported anxiety, stress, and increased pressure at work. She was diagnosed with general anxiety and was prescribed Wellbutrin and hydroxyzine. [Id. (citing Exh. 1F/42-43 (AR at 343-44)).[6]]

---

[4] (...continued)
WHCHC, which the ALJ received after the hearing. [List of Exhibits, AR at 44.]

[5] Exhibit 11F is Dr. Patrick's progress notes for October 2, 2014 to June 11, 2015. [List of Exhibits, AR at 44.]

[6] Exhibit 1F consists of records from office visits and
(continued...)

Further, the ALJ found the record belied Plaintiff's claim that medication was ineffective. In February 2013, Plaintiff reported "Klonopin was 'very helpful' in treating her anxiety but [she] was looking for additional relief." [Id. (quoting Exhibit 5F/49 (AR at 424)).] She was prescribed Celexa, but later, in February 2013, she was switched to Wellbutrin because of Celexa's side effects. [Id. (citing Exh. 5F/41-44 (AR at 416-19)).] In April 2013, Plaintiff was "'doing well'" on Wellbutrin and was having fewer panic attacks. [Id. at 7 (citing Exh. 5F/17 (AR at 392)).] The ALJ noted that, in September 2013, Plaintiff reported she had to take Klonopin approximately three to four times a month, but she was not experiencing panic attacks. [Id. (citing Exh. 7F/6 (AR at 454)).[7]] In February 2014, Mr. Russell noted Plaintiff had begun therapy with Dr. Patrick, and Plaintiff "was 'doing very well overall.'" [Id. (quoting Exh. 14F/98 (AR at 723)).] In August 2014, Dr. Patrick noted Plaintiff had no side effects from her medication. [Id. (citing Exh. 10F/14 (AR at 503)).] In October 2014, Dr. Patrick noted Plaintiff had stopped medication, but later that month, Dr. Patrick noted

_____

[6] (...continued)
follow-up visits from ZoomCare. [List of Exhibits, AR at 43.]
Zoomcare is in Beaverton, Oregon. See, e.g., AR at 302 (A
Summary of your ZoomCare Visit, dated 10/18/10).

[7] Exhibit 7F consists of follow-up visit reports, radiology
reports, and a Physical Therapy Discharge Report from WHCHC.
[List of Exhibits, AR at 44.]

Plaintiff "was 'increasingly stable' with the aid of medication."
[Id. (citing Exh. 11F/59 (AR at 620)) (quoting Exh. 11F/53 (AR at
614)).] By the end of October 2014, Dr. Patrick noted Plaintiff
"was 'using minimal amounts' of medication to stay 'stable.'"
[Id. (quoting Exh. 11F/51 (AR at 612)).] According to the ALJ,
in March 2015, Plaintiff complained of anxiety attacks at times,
but "was doing better overall with the use of Klonopin." [Id.
(citing Exh. 14F/46 (AR at 671)).] The ALJ noted Plaintiff had
"sufficient energy and motivation to exercise for weight loss" –
as evidenced by the loss of twenty pounds in the beginning of
2015 – and found Plaintiff "attempted to minimize her activities
during the hearing." [Id.] Further, in May 2015, Dr. Patrick
noted Plaintiff "had 'gradually accepted using meds to help
herself.'" [Id. at 8 (quoting Exh. 13F/3 (AR at 625).] Thus,
the ALJ found: "If limited to a work environment that involved
only simple, routine work, then then [sic [Plaintiff] could
maintain focus and would not experience the type of stress that
could exacerbate her otherwise controlled anxiety." [Id. at 7-
8.]

As to Plaintiff's difficulty leaving her home, the ALJ
noted Plaintiff took a vacation to the United Kingdom that lasted
approximately three weeks, although at the hearing Plaintiff
asserted she had some trouble on the flight. [Id. at 8 (citing
Exh. 7F/4 (AR at 452), Exh. 14F/150 (AR at 775) (notes from

health care providers regarding Plaintiff's statements about
upcoming trip)).] The ALJ found Plaintiff's "ability to navigate
airports, complete long flights, and vacation away from her home
for an extended period indicates that her anxiety symptoms are
significantly better controlled than alleged." [Id.]

As to Plaintiff's cognitive functioning, the ALJ found
testing in July 2014 showed Plaintiff's "cognitive functioning
has not been significantly affected by [her] psychological
condition." [Id. (citing Exh. 14F/155-56 (AR at 780-81).]
Plaintiff also reported to Dr. Patrick in December 2014 that she
and a friend were "learning 'Elfish.'" [Id. (citing Exh. 11F/37
(AR at 598)).]

Based upon the inconsistencies in the record and the
fact that Plaintiff's "understanding of her functioning and the
role of medication may not provide the best insight into her
condition" because of her slow acceptance of the role of
medication in her treatment, the ALJ found Plaintiff was "not
fully credible" and gave "little weight" to her "statements
regarding her functioning." [Id.]

Plaintiff's mother, Ms. Thompson, testified Plaintiff
has lived with her since Plaintiff's nervous breakdown. [Id.]
According to Ms. Thompson, Plaintiff "behave[s] in a 'child-like'
manner," and Ms. Thompson has "no hope" that Plaintiff is capable
of gainful activity. [Id. at 9.] The ALJ noted "family members

are not medically trained to make exacting clinical observations"
and found that, although Ms. Thompson was "generally credible as
to her observations, her statements [we]re inconsistent with the
medical evidence of record, which does not support [Plaintiff's]
allegations, and inconsistent with [Plaintiff's] reported level
of activity throughout the record." [Id.] The ALJ therefore
declined to give significant weight to Ms. Thompson's statements
that were inconsistent with the medical record. [Id.]

The ALJ also gave "very little weight" to Plaintiff's
global assessment of functioning ("GAF") scores of forty-five.[8]
[Id. (citing Exh. 5F/60, 63, 67, 69 (AR at 435, 438, 442, 444);
Exh. 6F/1 (AR at 447)).[9]] The ALJ noted GAF scores "are an
attempt to rate symptoms or functioning," but "[i]n this case, it

_____

[8] The GAF Scale measures "the clinician's judgment of the
individual's overall level of functioning" as to "psychological,
social, and occupational functioning," but not "impairment in
functioning due to physical (or environmental) limitations."
American Psychiatric Association, Diagnostic & Statistical Manual
of Mental Disorders (4th ed. Text Revision 2000) ("DSM-IV-TR") at
32. The GAF Scale ranges from 0-100. A score between 41-50
represents "[s]erious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) or any serious
impairment in social, occupational, or school functioning (e.g.,
no friends, unable to keep a job)." Id. at 34 (emphases
omitted). However, the GAF scale has been replaced by another
global measure of disability. See American Psychiatric
Association, Diagnostic & Statistical Manual of Mental Disorders
(5th ed. 2013) ("DSM-V") at 16.

[9] Exhibit 6F is a report on Plaintiff's mental status, dated
August 9, 2013, by Cynthia Galiano, LMFT. [List of Exhibits, AR
at 44.] "LMFT" refers to "Licensed Marriage and Family
Therapist."

is not evident from a review of the scores in the record which of these the respective clinicians were rating." [Id. (citing Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)).] Further, to the extent the GAF scores were based upon Plaintiff's statements about her ability to perform basic work activities, the scores were "of little value" because Plaintiff's "statements about her functioning [we]re less than fully credible." [Id.] The ALJ also noted "the GAF scale 'does not have a direct correlation to the severity requirements in our mental disorders listings." [Id. (citing 65 Fed. Reg. 50,746 at 50,764-50,765 (August 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00D)).]

The ALJ gave "little weight" to Ms. Galiano's opinion that, "'[d]ue to the severity of the depression and the frequency of panic attacks [Plaintiff] would not be able to work or maintain regular employment at this time in her life.'" [Id. at 9-10 (quoting Exh. 6F/2 (AR at 448)).] The ALJ found Ms. Galiano's opinion was not sufficiently supported, was influenced by Plaintiff's subjective complaints, and was inconsistent with the record before the ALJ. [Id. at 9.]

The ALJ noted "Dr. Patrick opined that [Plaintiff] had at least marked limitations in cognitive and social factors." [Id. at 10 (citing Exh. 13F/2-3 (AR at 624-25)).] The ALJ gave this opinion "little weight" for the same reasons as with

Ms. Galiano's opinion.  In particular, the ALJ noted Dr. Patrick accepted Plaintiff's statement about needing back surgery within three years without questioning it.  [Id. (citing Exh. 11F/4 (AR at 565)).]

The ALJ also considered the opinions of the state agency consultants and gave them "[g]reat weight . . . because they [we]re generally consistent with the overall record."  [Id. at 10-11.]  Harold Hase, Ph.D., opined that, from September 1 to December 31, 2011, Plaintiff had: no restrictions on her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated, extended episodes of decompensation.  [Id. at 10 (citing Exh. 2A (AR at 76-86) at 2A/5).[10]]  He also opined that, from January 1, 2013 to January 1, 2014, Plaintiff had or would have: mild restrictions on her activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated, extended episodes of decompensation.  [Id. (citing Exh. 2A/6).]  Further, he opined Plaintiff would "improve with treatment, but have some residual weakness in dealing with others due to anxiety."  [Id.

_____

[10] Exhibit 2A is Plaintiff's Initial Disability Determination Explanation ("Initial DDE"), dated July 24, 2013. [List of Exhibits, AR at 40.]  Certain parts of the Initial DDE have their own signature lines.

(citing Exh. 2A/9).]  The ALJ found that, based on the findings

by Thomas Christianson, M.D., regarding Plaintiff's RFC at the

time of the Initial DDE, Plaintiff "could perform the full range

of medium work."  [Id. at 11 (citing Exh. 2A/7-8).]

D. Lam, Ph.D., found that, in June 2014, Plaintiff had:

mild restrictions on her activities of daily living; moderate

difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace;

and no repeated, extended episodes of decompensation.  [Id. at 10

(citing Exh. 5A (AR at 89-102) at 5A/7-8).[11]]  He opined

Plaintiff

> could understand, remember, and carry out simple
> and detailed instructions; [s]he could attend,
> perform, and complete simple tasks with reasonable
> pace and persistence; she could behave
> appropriately and interact with coworkers and
> supervisors, with limited social contact; she
> could adapt to routine changes in a low-demand
> stetting [sic], avoid hazards, and set goals.

[Id. (citing Exh. 5A/11-12).]  In the Reconsideration DDE,

N. Shibuya, M.D., made the same limitations findings

Dr. Christianson made.  [Id. (citing Exh. 5A/9-10).]  The ALJ

also noted Dr. Hase and Dr. Lam formed these opinions even

without the benefit of evidence of Plaintiff's improvement with

medication and her ability to exercise and lose weight.  [Id.]

_____

[11] Exhibit 5A is Plaintiff's DDE on reconsideration
("Reconsideration DDE"), dated June 10, 2014.  [List of Exhibits,
AR at 40.]  Certain parts of the Reconsideration DDE have their
own signature lines.

The ALJ noted Plaintiff had past relevant work as: "an Administrative Clerk, DOT #219.362-010, SVP 4, and light";[12] and "an Information Clerk, DOT #237.367-022, SVP 4, and sedentary." [Id. at 11.] Based on the VE's opinion that someone with the RFC found by the ALJ could preform either occupation, the ALJ found Plaintiff was capable of performing either occupation, as she actually performed them previously or as they are generally performed. [Id.] In light of these findings, the ALJ did not address step five. The ALJ ultimately concluded Plaintiff was not disabled for purposes of the Social Security Act from the alleged onset date through the date of the Decision. [Id.]

In the instant Appeal, Plaintiff argues the ALJ erred in: 1) failing to incorporate Plaintiff's severe mental impairments, *i.e.*, anxiety and PTSD, in Plaintiff's RFC; 2) finding – based on suspect VE testimony – Plaintiff could perform her past relevant work, which was semi-skilled, even though Plaintiff was limited to simple, routine work; and 3) finding Plaintiff could perform her past relevant work, both

---

[12] "SVP" refers to "specific vocational preparation." See 20 C.F.R. § 404.1568(a). SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT") at App'x C – Components of the Definition Trailer (4th ed., rev. 1991). A level four SVP is "[o]ver 3 months up to and including 6 months." Id.

of which were Reasoning Level 4 jobs, when a person limited to simple, routine work cannot perform a Reasoning Level 3 job.

While the Commissioner contests Plaintiff's first argument, the Commissioner concedes the ALJ erred in finding that Plaintiff could perform her past relevant work as an administrative clerk and an information clerk. Both occupations are semi-skilled and require Reasoning Level four and, although such occupations – as they are described in the DOT – would be inconsistent with Plaintiff's limitations, the ALJ failed to obtain an explanation for the apparent conflict. [Answering Brief at 10-11.] However, the Commissioner contends the errors were harmless because: Plaintiff failed to prove that she is unable to perform her past relevant work as a counter attendant; and, even if there was an error in the ALJ's step four analysis, Plaintiff would still be considered not disabled at step five, based on the Medical-Vocational Guidelines ("Grids").

## STANDARD

### I.  Review of Social Security Decisions

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards the Ninth Circuit applies.

A court will only disturb the Commissioner's decision
if it is not supported by substantial evidence or if it is based
on legal error. Id. "Substantial evidence is more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir.
2012) (citation and internal quotation marks omitted). In
reviewing a decision by the Commissioner, a district court must
consider the entire record as a whole. Id. Where the inferences
reasonably drawn from the record would support either affirmance
or reversal, the district court may not substitute its judgment
for the ALJ's. Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th
Cir. 2012). To ensure a court does not substitute its judgment
for the ALJ's, it must "'leave it to the ALJ to determine
credibility, resolve conflicts in the testimony, and resolve
ambiguities in the record.'" Brown-Hunter v. Colvin, 806 F.3d
487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II. **Five-Step Analysis**

The following analysis applies in cases involving
review of the denial of social security disability benefits.

> For purposes of the Social Security Act, a
> claimant is disabled if the claimant is unable "to
> engage in any substantial gainful activity by
> reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected to
> last for a continuous period of not less than 12
> months." 42 U.S.C. § 423(d)(1)(A). In order to

determine whether a claimant meets this
definition, the ALJ employs a five-step sequential
evaluation. Parra v. Astrue, 481 F.3d 742, 746
(9th Cir. 2007); 20 C.F.R. §§ 404.1520(a),
416.920(a). In brief, the ALJ considers whether a
claimant is disabled by determining: (1) whether
the claimant is "doing substantial gainful
activity"; (2) whether the claimant has a "severe
medically determinable physical or mental
impairment" or combination of impairments that has
lasted for more than 12 months; (3) whether the
impairment "meets or equals" one of the listings
in the regulations; (4) whether, given the
claimant's "residual functional capacity," the
claimant can still do his or her "past relevant
work"; and (5) whether the claimant "can make an
adjustment to other work." 20 C.F.R.
§§ 404.1520(a), 416.920(a). The claimant bears
the burden of proof at steps one through four.
Parra, 481 F.3d at 746.

Molina, 674 F.3d at 1110. If the analysis reaches step five, the

burden shifts to the Commissioner to prove the claimant can

perform other work. Garrison v. Colvin, 759 F.3d 995, 1011 (9th

Cir. 2014).

**DISCUSSION**

**I.   Harmless Error**

Because the Commissioner has conceded ALJ erred by

concluding Plaintiff could perform her past relevant work as

either an administrative clerk or an information clerk, this

Court first addresses the Commissioner's argument that any error

was harmless.

"An error is harmless if it is inconsequential to the

ultimate nondisability determination, or 'if the agency's path

may reasonably be discerned,' even if the agency 'explains its

16

decision with less than ideal clarity.'" <u>Treichler</u>, 775 F.3d at 1099 (some citations and quotation marks omitted) (quoting <u>Alaska Dep't of Envtl. Conserv. v. EPA</u>, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" <u>Molina</u>, 674 F.3d at 1111 (alteration in <u>Molina</u>) (quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)).

### A.    Step Four Analysis

The ALJ found Plaintiff was "capable of performing past relevant work in either of the following **two** occupations" – administrative clerk or information clerk. [Decision at 10 (emphasis added).] The Commissioner contends this erroneous ruling was harmless because the VE testified a hypothetical individual with the same limitations Plaintiff had could work as a counter attendant. [Answering Brief at 11.] Plaintiff worked as a barista and a manager at Borders, but the VE did not consider the manager position to be past relevant work because Plaintiff did not "perform long enough as a manager."[13] [Trans. of 6/19/15 Hrg., AR at 72.] The DOT equivalent of that position would be a coffee shop counter attendant, code number

---

[13] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

311.477-014.  It is an unskilled, SVP 2 occupation that requires
light exertion.  [Id.]  In response to a hypothetical person of
the same age, education, and work background as Plaintiff, who is
limited to medium work that is simple and routine and does not
involve exposure to hazards, the VE responded, "I believe the
counter attendant would work."  [Id. at 72-73.]

          The Commissioner argues that, because Plaintiff had to
burden to prove she was unable to perform all of her past
relevant work and she did not offer any evidence she was unable
to perform the counter attendant position, Plaintiff would still
be deemed not disabled at step four, even without the ALJ's
error.  [Answering Brief at 11-12.]  The Commissioner is correct
that Plaintiff had the burden of proof as to step four.  See
Para, 481 F.3d at 746.  The Commissioner is also correct that, to
be found disabled at step four, Plaintiff had to prove she was
incapable of performing all of her past relevant work.  See 20
C.F.R. § 404.1560(c)(1) ("If we find that your residual
functional capacity does not enable you to do **any of your past
relevant work** . . . we will use the same residual functional
capacity assessment when we decide if you can adjust to any other
work." (emphasis added)); Tsosie v. Berryhill, 717 F. App'x 680,
683 (9th Cir. 2017) ("'Where an individual **cannot perform any of
his earlier jobs**, but only one or more tasks associated with
those jobs,' he cannot return to his past relevant work."

(emphasis added) (quoting <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1087 (9th Cir. 1985))).

Arguably, the VE's testimony, considered together with the other evidence in the record, could have supported a finding that Plaintiff was able to perform her past relevant work as a counter attendant, which would have required a step four ruling that she was not disabled. However, the ALJ's step four ruling was not based on Plaintiff's ability to perform the counter attendant position. Not only does the Decision not mention the counter attendant position, the ALJ expressly found Plaintiff could perform **two** of the occupations in her past relevant work – the administrative clerk and the information clerk. [Decision at 11.] This is not merely a situation where the ALJ's "path may reasonably be discerned, even if [the ALJ] explains its decision with less than ideal clarity." <u>See</u> <u>Treichler</u>, 775 F.3d at 1099 (citations and internal quotation marks omitted). The Ninth Circuit has also stated:

> Although we can affirm the judgment of a district court on any ground supported by the record, <u>Downs v. Hoyt</u>, 232 F.3d 1031, 1036 (9th Cir. 2000), **we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision**, <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Thus, if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline.

Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)

(emphasis added).  Further, the Ninth Circuit's

> "precedents have been cautious about when harmless
> error should be found." Marsh v. Colvin, 792 F.3d
> 1170, 1173 (9th Cir. 2015).  Ever mindful of our
> duty not to substitute our own discretion for that
> of the agency, we have emphasized that "the
> decision on disability rests with the ALJ and the
> Commissioner of the Social Security Administration
> in the first instance, not with a district court."
> Id. at 1173. . . .
>
> **A reviewing court may not make independent
> findings based on the evidence before the ALJ to
> conclude that the ALJ's error was harmless.**
> [Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050,
> 1054 (9th Cir. 2006)]; see also Marsh, 792 F.3d at
> 1172 (a district court may not find harmless error
> by "affirm[ing] the agency on a ground not invoked
> by the ALJ").  Rather, "[w]e are constrained to
> review the reasons the ALJ asserts." Connett v.
> Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). . . .

Brown-Hunter, 806 F.3d at 492 (some alterations in Brown-Hunter)

(emphasis added).

The Commissioner argues that, in Matthews v. Shalala,

10 F.3d 678, 681 (9th Cir. 1993), the Ninth Circuit held there

was "harmless error where the ALJ did not consider the claimant's

inability to perform one past relevant job because the claimant

had not shown an inability to perform his other past relevant

work."  [Answering Brief at 11.]  However, the issue in Matthews

was whether "the ALJ erred by improperly excluding from the

vocational expert's consideration a hypothetical including the

staying in one position limitation."  10 F.3d at 681.  The Ninth

Circuit stated:

other reliable evidence existed in support of the
ALJ's findings. First, Matthews' own testimony
that the receiving clerk/inspector position
required a combination of both sitting and
standing is highly probative. Second, the ALJ,
relying on medical evidence, found Matthews' pain
complaints to be not credible. Although Matthews
argues that the ALJ ignored the staying in one
position limitation in deciding whether he could
return to work, we think it more likely that the
ALJ, having considered this limitation, dismissed
its applicability to the receiving clerk/inspector
work after considering the other evidence.
Whether or not the ALJ erred in not including all
of Matthews' limitations in a hypothetical is thus
irrelevant given the other reliable evidence. Any
error would have been harmless. See Curry v.
Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990).

Id. The harmless error analysis in Matthews therefore does not

support the Commissioner's position in this case – that a

reviewing court can affirm an erroneous past relevant work ruling

based on the claimant's ability to perform other past relevant

work which was not addressed in the ALJ's decision. The

Commissioner's argument that the ALJ's erroneous step four

analysis is harmless because Plaintiff failed to prove she was

incapable of performing her past relevant work as a counter

attendant is rejected.

    B.    **Step Five Analysis**

        The Commissioner also argues the ALJ's error in the

step four analysis was harmless because Plaintiff would have been

found not disabled at step five, based on the Grids. [Answering

Brief at 12-13.] The Commissioner argues that, in Tommasetti v.

Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008), the Ninth Circuit

21

found the "error at step four harmless because the claimant was not disabled at step five." [Id. at 13.] However, in that case, the Ninth Circuit stated:

> Although the ALJ's step four determination constitutes error, it is harmless error **in light of the ALJ's alternative finding at step five.** At step five, the ALJ concluded that, assuming Tommasetti could not perform past work, he could still perform other work in the national and local economies that existed in significant numbers. . . .

Tommasetti, 533 F.3d at 1042 (emphasis added); see also, e.g., Davenport v. Colvin, 608 F. App'x 480, 482 (9th Cir. 2015) ("Any error in the ALJ's step-four determination that Davenport was able to perform past relevant work is harmless in light of the ALJ's alternative step-five decision, which was supported by substantial evidence." (citing Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008))).

Unlike in Tommasetti, the ALJ did not set forth an alternate step five analysis after ruling at step four that Plaintiff was not disabled. See Decision at 11. This Court therefore cannot conclude the ALJ's error at step four was harmless based on a step five analysis. To do so would be to affirm the ALJ's Decision based on an improper *post hoc* rationalization. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not

*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." (some citations omitted) (citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947))).  The Commissioner's step five argument is rejected, and this Court concludes that the ALJ's error at step four was not harmless.

Plaintiff's Appeal is granted, and the ALJ's Decision vacated, as to the step four past relevant work analysis.  The case is remanded to the ALJ for further proceedings.

## II.  <u>Residual Functional Capacity</u>

To the extent the Decision addresses whether Plaintiff was disabled from her alleged onset date through the date of the Decision and this Court has remanded the case for further proceedings, the evidence the parties may present during those proceedings "'may well prove enlightening' in light of the passage of time."  <u>See</u> <u>Treichler</u>, 775 F.3d at 1101 (quoting <u>I.N.S. v. Orlando Ventura</u>, 537 U.S. 12, 18, 123 S. Ct. 353 (2002)).  Because that evidence may be relevant to the RFC analysis, this Court declines to address Plaintiff's argument that the ALJ erred in failing to incorporate her severe mental impairments into her RFC.

## <u>CONCLUSION</u>

On the basis of the foregoing, Plaintiff's appeal of the Administrative Law Judge's August 26, 2015 Decision is HEREBY

GRANTED insofar as the ALJ's Decision is VACATED and the case is REMANDED to the ALJ for further proceedings.  In light of these rulings, Plaintiff's "Motion for Summary Adjudication," filed September 18, 2017, is also GRANTED.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **July 16, 2018**, unless a motion for reconsideration of this Order is filed not more than 14 days after this Court's written Order is filed.  See Local Rule 60.1.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 29, 2018.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**TRACEE DAWN CUMMINGS VS. NANCY A. BERRYHILL; CIVIL 17-00186 LEK-RLP; ORDER GRANTING PLAINTIFF'S APPEAL, VACATING THE ADMINISTRATIVE LAW JUDGE'S AUGUST 26, 2015 DECISION, AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**